# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MAINE

|  |  |  |
|---|---|---|
| GILBANE BUILDING COMPANY, <br> Plaintiff <br><br> v. <br><br> NEW ENGLAND REGIONAL <br> COUNCIL OF CARPENTERS, <br> Defendant | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | Civil Action No. |

## COMPLAINT TO VACATE ARBITRATOR'S AWARD

**Introduction**

Plaintiff holds a general contract for a construction project at Mercy Hospital. Through a competitive bidding process, Plaintiff subcontracts specific pieces of the project, such as the drywall work. No union drywall subcontractor bid on the project when Plaintiff first sought bids. Although not contractually required to, Plaintiff put the drywall project out to bid a second time, and the lowest union subcontractor's bid came back more than $1 million higher than the lowest non-union subcontractor bid. A union subcontractor later lowered its bid from $1 million to $222,000 over the lowest subcontractor's bid. The contract between Plaintiff and Defendant does not require Plaintiff to award a subcontract to a union subcontractor whose bid was not competitive.

Despite the great weight of the evidence and the plain language of the contract, the Arbitrator found that the Plaintiff was required to accept the union subcontractor's bid at an additional cost to Mercy Hospital of $222,000. Moreover, the Arbitrator contemplates an award to the Union of monetary damages, which, according to the Union, could exceed $1 million.

Plaintiff believes that the Arbitrator's decision and award is not supported by the plain language of the contract and that she thereby exceeded her authority under the contract. In addition, Plaintiff asserts that the Arbitrator's contemplated remedy is unlawful and in violation of public policy. Thus, it asks this Court to vacate the Arbitrator's decision and award.

**Jurisdiction**

1. This is a Complaint for vacation of an arbitrator's decision and award pursuant to Section 301 of the Labor-Management Relations Act, 29 U.S.C. § 185, and 14 M.R.S.A. § 5938.[1]

2. The Plaintiff is Gilbane Building Company ("Gilbane"), a Rhode Island Corporation doing business in Maine, with a Maine business address of 201 Fore River Parkway, Portland, ME, 04102, and an "employer" within the meaning of Section 2 of the National Labor Relations Act, (Act"), 29 U.S.C. § 152.

3. The Defendant is the New England Regional Council of Carpenters ("Union"), an unincorporated labor organization doing business in Maine, with a business address of 803 Summer St., South Boston, MA, 02127, and a "labor organization" within the meaning of Section 2(5) of the Act, 29 U.S.C. § 152(5).

4. This Court has jurisdiction of this matter pursuant to 29 U.S.C. § 185, and 28 U.S.C. § 1331 (federal question jurisdiction). Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b).

**Background:**

5. Gilbane and the Union are parties to a collective bargaining agreement beginning

---

[1] The arbitrator's Decision and Award, and the arbitration exhibits, including the parties' collective bargaining

in 2004 and covering all periods relevant to this matter. Under this CBA Gilbane is a "construction manager," and the CBA purports to regulate the manner in which Gilbane may seek and engage subcontractors. Generally, Gilbane and the Union are required to seek "suitable, competitive" union subcontractors. If no such union subcontractors can be found, then Gilbane "will be relieved of the subcontracting clause" and may engage a nonunion subcontractor so long as that nonunion subcontractor is "responsible," meaning that subcontractor commits to provide workers compensation and full-coverage health insurance for its employees, and it does not seek to misclassify employees as independent contractors.

6. In or about 2005-06, Gilbane sought and won a contract to construct a $50 million, 151,000 square foot project for Mercy Hospital in Portland, Maine. This was the first project Gilbane had undertaken in Maine since signing the CBA in 2004. The drywall portion of this project had an estimated cost of $2.9 million. The Union gave Gilbane a list of seven (7) union drywall subcontractors, which Gilbane attempted to contact to provide bid specifications. Several of these seven were interested, and Gilbane forwarded bid specifications to them. Bids were due on December 5, 2006, known as "bid day." Gilbane's contract with Mercy Hospital required at least three bids for each aspect of the project, including the drywall subcontract.

7. On the December 5, 2006, bid day, none of the union subcontractors submitted a bid. Gilbane then wrote the Union asking to be relieved under the CBA's subcontracting clause pursuant to its understanding of the CBA. The Union never responded.

8. Gilbane then rebid the drywall subcontract to both union and nonunion drywall subcontractors, with a new bid day of January 17, 2007. Gilbane received several bids, the three

---

agreement(s) are attached as Exhibits 1 through 36, with the pages Bates stamped.

lowest being from companies named Kal-Vin, Optimum and ITR; only ITR, the highest of the three by about $1 million, was a union drywall subcontractor. While ITR revised its bid several times over the next two months or so, it never came closer to the lowest bidder, Kal-Vin, than about $222,000. Gilbane awarded the drywall subcontract to Kal-Vin at a price of $3,043,000, rather than ITR's final price of $3,255,000.

9. The Union asserted that Kal-Vin was not a "responsible" subcontractor within the meaning of the CBA, but Gilbane secured contractual commitments from Kal-Vin that ensured that, at least for this project, Kal-Vin was "responsible" within the meaning of the CBA.

10. The Union then filed a grievance under the CBA's grievance and arbitration machinery, claiming in essence (1) that Gilbane could not award the drywall subcontract to Kal-Vin because there was a union drywall subcontractor who had submitted a "competitive" bid ($222,000 higher than Kal-Vin being a "competitive" bid according to the Arbitrator), and (2) that Gilbane was required to consider ITR's series of revised bids submitted after bid day.

11. Ultimately the parties arbitrated this grievance. Hearings were held on November 11 and 12, 2007 and February 26, 2008 before Arbitrator Sarah Kerr Garraty. Arbitrator Garraty issued her decision and award on May 5, 2007, which was received by Gilbane on May 8, 2008. In summary, Arbitrator Garraty found that Gilbane had violated the subcontracting language of the CBA by failing to award the drywall subcontract to ITR, by failing to consider ITR's revisions to its bid after bid day, and by failing to consider a differential of 7% between Kal-Vin's bid and ITR's final bid as being "competitive" under the CBA.

12. Thus according to Arbitrator Garraty, Gilbane should have awarded the drywall subcontract to the union bidder at an additional cost to Mercy Hospital of over $220,000.

13.     Arbitrator Garraty has reserved jurisdiction in order to hear the parties on the appropriate remedy.  Nevertheless, Arbitrator Garraty indicated in her decision that the remedy would consist of an award of monetary damages of up to or in excess of $1,000,000 from Gilbane to the Union – not to ITR or its employees (who were not party to the arbitration), but to the Union itself.  In fact, the Arbitrator considered that she had the authority to order Mercy Hospital to tear down the drywall work and permit ITR to perform the work over again, although she indicated that as a matter of discretion she would not make such an award;

14.     In the Arbitrator's view, apparently monetary damages should consist of either or both "reimbursement for lost man hours on behalf of the ITR employees who lost the work opportunity or on behalf of the Union as an entity for more difficult to calculate loss of work opportunities for its members generally and for the potential lost opportunity to bring 'other drywall and other carpentry subcontractors into the Union fold.'"

15.     Gilbane now respectfully requests this Court to vacate Arbitrator Garraty's decision and award pursuant to Section 301 of the Labor-Management Relations Act, 29 U.S.C. § 185, and 14 M.R.S.A. § 5938.

## Count I

16.     Gilbane hereby realleges the facts set forth in paragraphs 1-15 above as though fully set forth herein.

17.     The Arbitrator's award is in violation of Section 301 of the Labor-Management Relations Act, 29 U.S.C. § 185, and 14 M.R.S.A. § 5938, in that:

    a.      the Arbitrator's decision and award violates public policy by, among other things, artificially inflating the construction costs of a health care facility

        by over $220,000, to the detriment of the public good;

b.    the Arbitrator exceeded her powers under the parties' CBA by awarding an unlawful monetary remedy;

c.    the Arbitrator exceeded her powers by making an award contrary to the plain language and meaning of the parties' CBA;

d.    the Arbitrator exceeded her powers by rendering a decision that totally disrupts the bidding process in the construction industry in Maine, with the effect that even after "bid day" the construction manager must continue to accept revised bids from rejected union bidders;

e.    the Arbitrator did not draw her award from the essence of the parties' CBA and dispensed her own brand of industrial justice;

**WHEREFORE**, Plaintiff respectfully requests this Court to VACATE the arbitrator's award and award any other relief the Court deems just.

Dated: June 5, 2008                      Respectfully submitted,

                                              GILBANE BUILDING COMPANY
                                              By its attorneys,

                                              /s/ Daniel L. Rosenthal
                                              _____
                                              Daniel L. Rosenthal
                                              Verrill Dana, LLP
                                              One Portland Square
                                              Portland, ME  04112
                                              (207) 774-4000

                                              Arthur Murphy
                                              Geoffrey P. Wermuth
                                              Murphy, Hesse, Toomey & Lehane, L.L.P.
                                              300 Crown Colony Drive, Suite 410

Quincy, MA 02169
(617) 479-5000